IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY JOSEPH ALEX I,  :
    Plaintiff  :
      :  CIVIL NO. 1:CV-13-0304
  vs.  :
      :  (Judge Caldwell)
JOHN E. WETZEL, *et al.*,  :
    Defendants  :

*M E M O R A N D U M*

I.   *Introduction*

The *pro se* plaintiff, Anthony Joseph Alex, a prisoner at the Waymart State Correctional Institution (SCI-Waymart), in Waymart, Pennsylvania, filed this federal civil-rights action pursuant to 42 U.S.C. § 1983. The defendants are Thomas Corbett, Governor of the Commonwealth of Pennsylvania; John Wetzel, Secretary of the Pennsylvania Department of Corrections (DOC); and the following SCI-Waymart employees: Superintendent Wayne Gavin; Deputy Superintendent Rhonda Ellett; Major Kosciuk; Capt. Dobbs; Capt. Mushensky; Capt. Scharst; Lt. Smith; Sgt. Villella; Corrections Officer (CO) Nevins; Mark Fryer; H. Bognatz; T. Mikolon; Hearing Examiner Dupour; Ms. Banta; John Gelatt; Unit Secretary Kelley; and Mr. Dewaele.

Alex alleges that he was found guilty of a false misconduct and spent several days in SCI-Waymart's Restricted Housing Unit (RHU) before the misconduct charge was set aside. He claims Ms. Bognatz, his counselor, issued him the false misconduct in retaliation "for [him] going over her head" when asking for help with a transfer. (Doc. 1-2, ECF p. 7.) He also claims that other prison

officials, whom he contacted prior to his misconduct hearing, failed to intervene on his behalf and investigate his claims of innocence. (*Id.*, ECF pp. 12-13.) He also sues the prison officials involved in addressing his administrative remedies because they failed to take any corrective action against Ms. Bognatz after they overturned the false misconduct. (*Id.*) Finally, he names several supervisory employees claiming they failed to properly supervise their subordinates. (*Id.*)

We are considering the defendants' motion to dismiss, filed under Fed. R. Civ. P. 12(b)(6). That motion argues the Complaint should be dismissed in its entirety because it is not factually sufficient. It also presents an argument against the First Amendment retaliation claim against defendant Bognatz. For the reasons set forth below, the motion will be denied as to the retaliation claim. The court will also exercise its authority pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) to dismiss *sua sponte* the other claims against the remaining defendants.

II.     *Standard of Review*

Under 28 U.S.C. § 1915(e)(2)(B), the court has the authority, at any time, to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). The standard for reviewing a complaint under this section is the same as that for determining a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Allah v. Seiverling*, 229 F.3d 22, 223 (3d Cir. 2000).

Pursuant to Fed. R. Civ. P. 8(a), a complaint need only "include a short

-2-

and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." "[T]he factual allegations of a complaint 'must be enough to raise a right to relief above the speculative level' and the complaining party must offer 'more than labels and conclusions' or 'formulaic recitation of the elements of a cause of action.'" *W. Run Student Hous. Assocs., LLC. v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)).

When reviewing a Rule 12(b)(6) motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89. 93-94, 127 S.Ct. 2197, 2199-200, 167 L.Ed.2d 1081 (2007); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). However, unlike factual allegations, legal conclusions in pleadings "are not entitled to the assumption of truth." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). Legal conclusions "must be supported by factual allegations." *Iqbal*. 566 U.S. at 679, 129 S.Ct. at 1950. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965); *see also PA Prison Soc. v. Cortes*, 622 F.3d 215, 233 (3d Cir. 2010).

In deciding a motion to dismiss, the court may rely on the complaint, exhibits attached to the complaint, and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider

-3-

"undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Finally, we note that *pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys. *See Higgs v. Attorney General,* 655 F.3d 333, 339-40 (3d Cir. 2011). This leniency, however, has limits. *Pro se* plaintiffs must still allege sufficient facts in their complaint to support a valid claim and "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). While the "courts need not provide substantive legal advice to *pro se* litigants," *Mala*, 704 F.3d at 244-45, courts are to grant *pro se* litigants leave to file a curative amended complaint, even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See DelRio-Mocci v. Connonlly Prop., Inc.*, 672 F.3d 241, 251 (3d Cir. 2012). Thus, a complaint that sets forth facts that affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir. 2002).

III. *Background*

The following background is taken from Alex's Complaint and the documents attached to it. On September 24, 2012, Alex was issued misconduct B089540 and charged with two Class I offenses: refusing to obey an order and unauthorized use of mail or

-4-

telephone. (Doc. 1-3, ECF p. 8). Alex is alleged to have called the victim of his indecent-assault conviction, his daughter, on September 3, 2012. (*Id.*) The September 24, 2012, misconduct report noted that the "date of the report differs from the date of incident due to investigation. Attached are: Authorized Phone List;[1] Cumulative Reports; Request for Correspondence." (*Id.*) J. Bognatz, was the reporting staff member. The misconduct report was reviewed and approved by CO4 James Schartz, the ranking corrections officer on duty that day. Alex was given a copy of the misconduct, a request for witness and representation form, and an inmate version form for his use. (*Id.*, ECF pp. 8-10).

After receiving the misconduct, but prior to his misconduct hearing, Alex spoke to several staff members concerning his innocence, but they would not "help [him]." (*Id.*, ECF p. 23). First, Alex approached Mr. Fryer, his Unit Manager, who told him that "he could not help [him], because the misconduct was issue[d]." (*Id.*) Alex then wrote two request slips, one to Deputy Supt. Ellett, and another to Mrs. Mikolon in the Psychology Department. (*Id.*; *see also* Doc. 1-4, ECF pp. 8-9). He also called his family and asked that they overnight letters to him affirming that he did not speak with his daughter on September 3, 2012, when he called the Fromville home. (Doc. 1-3, ECF p. 24).

On September 25, 2012, Mrs. Mikolon was not present at the institution. (*Id.*) Deputy Ellett, however, was and responded to Alex's request advising him that if he wished to speak to her about the misconduct, he must "go through the process," but if he wanted to discuss another issue he should write back to her. (Doc. 1-4, ECF p. 8).

---

[1] On April 11, 2012, Counselor Bognatz approved Alex's request to add his son-in-law's phone number to his list of approved telephone numbers. *See* Doc. 1-3, ECF p. 10. Counselor Bognatz noted: "DO NOT SPEAK WITH VICTIM AMANDA AT FROMVILLE HOME. Security Notified." (*Id.*)

-5-

On September 26, 2012, Mrs. Mikolon met with Alex. (Doc. 1-3, ECF p. 25). They discussed the misconduct. She told him that "if [he] didn't talk to Amanda, she would help [him]". (*Id.*) On September 27, 2012, when passing in the corridor, Mrs. Mikolon asked how Alex was doing and whether he had his misconduct hearing yet. (*Id.*) The same day he sent a request slip to Capt. Dobbs asking why he did not receive a copy of the documents that were purportedly attached to the misconduct. (*Id.*, ECF p. 27; Doc. 1-4, ECF p. 10). He also sought a copy of the transcript of the September 3, 2012, phone call that led to the misconduct. (Doc. 1-4, ECF p. 10). His family wrote on his behalf affirming that he had not spoken to his daughter during the September 3, 2012, phone call. (*Id.*) Later that night, Alex learned that the packet containing the letters was returned as undeliverable by the prison as it was not properly addressed. (*Id.*) He eventually received the letters on October 1, 2012. (*Id.*; *see also* pp. 11-14).

On September 28, 2012, Hearing Examiner Joseph Dupont presided over Alex's misconduct hearing. (Doc. 1-3, ECF p. 15 and p. 27). Although Alex did not seek staff representation, he did request several civilian witnesses (various family members who were present at his daughter's house and would allegedly testify that while he did call the house, he did not speak to her that day). (*Id.*, ECF p. 9). The Hearing Examiner denied Alex's witnesses, noting that they were neither inmates nor SCI-Waymart employees. (*Id.*, ECF p. 15). While Alex did admit to having corresponded with his victim previously, he denied any contact with her on September 3, 2012, as charged. (*Id.*) The Hearing Examiner found "the report of [Ms. Bogantz] more credible than Alex's denial," and found him guilty on both charges. (*Id.*) As a sanction, Alex was sentenced to 90 days' disciplinary custody and his telephone privileges were suspended for 180 days. (*Id.*) CO

-6-

Nevins, who was present at the hearing, laughed and made fun of Alex. (*Id.*, ECF p. 18 and p. 28).

On October 2, 2012, Alex filed a misconduct hearing appeal with the Program Review Committee (PRC). (*Id.*, ECF p. 16). The PRC members considering Alex's appeal were: Ms. Banta; John Gelata; and Lt. Villella. (*Id.*, ECF p. 21). On October 10, 2012, "the Program Review Committee notes that the Security Office reviewed the telephone call and determined that Alex did not speak with his victim. Therefore, the Program Review Committee is dismissing this misconduct and prohibits recharge." (*Id.*)

On October 24, 2012, Alex filed grievance number 422806 with Joseph Vinansky, SCI-Waymart's Grievance Coordinator. (*Id.*, ECF pp. 22-31). In his grievance, Alex stated that he received the false misconduct in "retaliation for [his] pushing for a transfer."[2] (*Id.*, p. 28). The following day his grievance was rejected because it related to a misconduct which must be appealed in accordance with DC-ADM 801, Inmate Discipline/Misconduct Procedures, and because it exceeded the page limit. (*Id.*, ECF p. 32). On November 1, 2012, Alex filed a grievance appeal with SCI-Waymart Supt. Wayne Gavin. (*Id.*, ECF p. 33). On November 21, 2012, Supt. Gavin denied Alex's appeal. (*Id.*, ECF p. 35). On December 6, 2012, Alex filed an appeal to the Secretary's Office of Inmate

---

[2] On September 23, 2012, Alex sent Ms. Bogantz a request slip stating that after writing Deputy Superintendent Ellett regarding an Incentive Based Transfer she referred him to Bognatz. (Doc. 1-4, ECF p. 7). Ms. Bognatz responded:

> I have already explained — you do not meet criteria — you are scheduled to see parole with 9 months — not eligible if you are on a parole docket in the next 9 months. I already replied to this same request on 9/4/2012 — once you receive a greensheet you can request — need copy of 'green sheet.'

(*Id.*) Ms. Bognatz's response is dated September 24, 2012. (*Id.*)

-7-

Grievances and Appeals. (Doc. 1-4, ECF p. 1). On January 18, 2013, Dorina Varner, the Chief Grievance Officer dismissed the appeal. (*Id.*)

Alex claims that defendants Governor Corbett, Secretary Wetzel, and Major Kosciuk failed to properly supervise their subordinate employees. He states Deputy Ellett, Capt. Dobbs, Capt. Mushensky, Capt. Scharst, Lt. Smith, Unit Manager Fryer and Mrs. Mikolon refused to intervene or talk to him about the misconduct prior to his hearing. (*Id.*, ECF pp. 4-6). CO Nevins is named for verbally harassing Alex at his misconduct hearing. (*Id.*) Hearing Examiner Dupont is alleged to have violated Alex's due-process rights during the misconduct hearing. (*Id.*) The PRC members (Banta, Gelatt and Villella) are sued because they failed to report Ms. Bognatz to the DOC's Central Office "for [filing a] falsified state document." (*Id.*, ECF p. 6). Unit Manager Fryer, Couselor DeWaele, and Unit Secretary Kelley are alleged to have intimidated Alex by questioning him about his grievance. (*Id.*, ECF p. 6). Counselor DeWaele and Unit Secretary Kelley are named as defendants, but Alex does not specify what action, if any, they took to violate his civil rights. (*Id.*)

IV.   *Discussion*

  A.   *Alex's Claim of Retaliation Against Bognatz is Adequately Pled*

A false misconduct report is not in itself a civil-rights violation, but if it was issued in retaliation for an inmate's exercise of a constitutional right, such as filing lawsuits and grievances, it is actionable. *See Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). To prevail on a retaliation claim, a prisoner must show that: (1) he engaged in constitutionally protected conduct; (2) he

-8-

suffered some "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) his protected conduct was a substantial or motivating factor in the decision to discipline him. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Once a prisoner establishes a prima facie case, a defendant may overcome the retaliation claim by showing "by a preponderance of the evidence that it would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citation omitted).

Here, Alex alleges that the same day Ms. Bognatz learned that he consulted Deputy Superintendent Ellett regarding the transfer issue he had previously discussed with her, she issued him a false misconduct. Alex avers she issued the misconduct in retaliation for going over her head regarding the transfer issue to Deputy Superintendent Ellett.

In moving to dismiss this claim, Defendants argue that because Alex was found guilty of the misconduct, they have carried their burden of showing that Bognatz would have issued the misconduct even if she had not learned that Alex consulted Deputy Superintendent Ellett regarding a transfer. *See Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)(a finding of guilt at a prison disciplinary hearing based on some evidence "essentially checkmates [the] retaliation claim."); *Romansky v. Stickman*, 147 F. App'x 310, 312 (3d Cir. 2005)(nonprecedential)("in light of the fact that he was found guilty of

-9-

misconduct, Romansky does not state a retaliation claim based upon his receipt of a misconduct")(citing *Henderson*).  In other words, Defendants assert the Hearing Examiner's finding of guilty precludes Alex from establishing the third prong of his retaliation claim.

Were these the facts of this case, perhaps defendants' argument would have some merit; however, they are not.  While burdensome to sift through, the attachments to the Complaint clearly demonstrate that the PRC overturned the Hearing Examiner's findings and dismissed the misconduct with prejudice.  *See* Doc. 1-3, ECF p. 21.  Because the finding of guilt was overturned, we decline to dismiss Alex's First Amendment retaliation claim against Ms. Bognatz on the argument advanced.

### B.   *Alex Fails to State a Due Process Claim Against Hearing Examiner Dupont*

Although Defendants did not directly move to dismiss the due-process claim against Hearing Examiner Dupont, the court will exercise its authority under 28 U.S.C. § 1915(e)(2)(B)(ii) and *sua sponte* dismiss this claim for failure to state a claim upon which relief may be granted.

Alex alleges that Dupont violated his due-process rights at the disciplinary hearing that led to his placement in the RHU for fifteen days.  He claims Dupont denied him the opportunity to present his civilian witnesses at the misconduct hearing and failed to personally listen to the phone call in question.  Additionally, there was insufficient evidence to support a finding of guilt because the hearing examiner relied solely on Ms. Bognatz's misconduct report.[3]  Even if true, these allegations do not support a due-process claim

---

[3] We note that Alex concedes that the Hearing Examiner did not have access to his civilian witnesses' written statements he attaches to his Complaint as he did not receive them until October

against Dupont.

To assert a right to procedural due process, Plaintiff must have a liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).  "A prisoner facing the loss of a legally cognizable liberty interest following disciplinary proceedings has a due process right to certain procedural protections, including the opportunity to call witnesses and present documentary evidence."  *Dunbar v. Barone*, 487 F. App'x 721, 724 (3d Cir. 2012) (nonprecedential)(addressing an inmate's claim that his procedural due process rights were violated when he was not permitted to call witnesses at his misconduct hearing), citing *Wolff v. McDonnell*, 418 U.S. 539, 566-67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).  "But, this due process right is not triggered unless the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Dunbar*, 487 F. App'x at 724-25 (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)).

"[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest."  *Smith v. Mensinger,* 293 F.3d 641, 653 (3d Cir. 2002)(quoting *Sandin*). To determine if Plaintiff's placement was atypical, we consider "the following two factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary

---

1, 2012, several days after his misconduct hearing.  *See* Doc. 1-3, ECF p. 26.

confinement." *Shoats*, 213 F.3d at 144.

Here, Alex was housed in disciplinary custody for fifteen days as a result of the misconduct before it was overturned by the PRC. He does not allege any facts showing that the length of his confinement, or the conditions of his confinement in the RHU, amounted to an "atypical and significant hardship" under *Sandin* so as to deprive him of a protected liberty interest. "Administrative or disciplinary custody will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith*, 293 F.3d at 653 (an allegation of a false disciplinary report resulting in seven months' disciplinary confinement was not sufficient to constitute a due process deprivation under *Sandin*); *see also Edmonds v. Sobina*, 296 F. App'x 214 (3d Cir. 2008)(nonprecedential)(90 days in the RHU not an "atypical and significant hardship"); *Torres v. Fauver*, 292 F.3d 141, 150-51 (3d Cir. 2002)(because prisoners can reasonably anticipate transfer to disciplinary custody, placement in segregation as a disciplinary sanction did not implicate a protected liberty interest)*; Griffin v. Vaughn,* 112 F.3d 703, 706 (3d Cir. 1997)(finding that placement of a prisoner in administrative custody for fifteen months did not involve an atypical, significant deprivation).

Having found no liberty interest at issue, we will dismiss Alex's claim against Hearing Examiner Dupont without leave to amend, as amendment would be futile.

*C.     Alex's Claims of Verbal Harassment Fails to State a Claim
        Against CO Nevins, Unit Manager Fryer, Mr. DeWaele and Mrs.
        Kelley*

Although Defendants did not directly move to dismiss the verbal harassment claims against these defendants, the court will exercise its authority under 28 U.S.C. §

1915(e)(2)(B)(ii) and *sua sponte* dismiss these claims for failure to state a claim upon which relief may be granted.

  Alex alleges that CO Nevins verbally harassed him at the misconduct hearing. He also alleges Unit Manager Fryer, Counselor DeWaele and Unit Secretary Kelley intimidated and harassed him when questioning him about a grievance. (Doc. 1-4, ECF pp. 5-6). Assuming the allegations are true, it is well established that the use of words, no matter how violent, vulgar or unprofessional, is not actionable under 42 U.S.C. § 1983. *Dunbar,* 487 F. App'x at 723 ("[V]erbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment," also noting that racial harassment by mimicking Ku Klux Klan hoods failed to state a claim); *Robinson v. Taylor*, 204 F. App'x 155, 156 (3d Cir. 2006)(non precedential)(inmate claiming correctional officers made racial and sexual comments toward him failed to state an Eighth Amendment claim). Consequently, because the alleged verbal harassment was not accompanied by any injurious actions, or physical actions of any kind, by the named defendants, Alex fails to state a cognizable claim against them. Alex's claim of verbal harassment will be dismissed without leave to amend, as amendment dbnement would be futile.

  *D. Alex Fails to State a Claim Against the Remaining Defendants*

  Defendants did not directly move to dismiss the claims lodged against the remaining defendants: Governor Corbett; Secretary Wetzel; Supt. Gavin; Major Kosciuk; Deputy Supt. Ellett; Capt. Dobbs; Capt. Mushensky; Capt. Scharst; Lt. Smith; Counselor Fryer, Ms. Mikolon; Ms. Banta; John Gelatt and Lt. Villella. Nonetheless, due to their lack of personal involvement in the underlying retaliation claim, the court will exercise its authority

under 28 U.S.C. § 1915(e)(2)(B)(ii) and *sua sponte* dismiss these Defendants from the action.

Under § 1983, an individual may sue state actors to enforce federal constitutional rights.  *See* 42 U.S.C. § 1983.  To succeed on a § 1983 claim, an individual must prove that: (1) the conduct in question was committed by an individual acting under the color of state law, and, (2) the conduct deprived the claimant of a constitutional right. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 46 L.Ed.2d 561 (1976); *Harvey v. Plains Tp. Police Dept.*, 421 F.3d 185, 189 (3d Cir. 2005).  Section 1983 will not support a claim based on *respondeat superior* or vicarious liability. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)(citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).  Personal involvement is an essential element of a civil-rights action.  *Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003).  Individual liability can only be imposed if the state actor played an "affirmative part" in the conduct complained of.  *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence" in the challenged practice. *Argueta v. U.S. ICE*, 643 F.3d 60, 72 (3d Cir. 2011)(quoting *Rode*, 845 F.2d at 1207).  "In a § 1983 suit . . .  masters do not answer for the torts of their servants."  *Iqbal*, 556 U.S. 662, 676-77, 129 S.Ct. 1937, 1948-49.  The mere assertion "that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did" is insufficient to establish liability.  *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

Likewise, participation in the after-the-fact review of a grievance or other administrative remedy is not enough to establish personal involvement.  *See, e.g. Rode*, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual

knowledge necessary for personal involvement); *Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013)(nonprecedential) (finding "an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement" requirement); *Pressley v. Beard*, 266 F.App'x 216, 218 (3d Cir. 2008) (nonprecedential) ("The District Court properly dismissed these [supervisory] defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006)(nonprecedential)(allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation); *Burnside v. Moser,* 138 F. App'x 414, 416 (3d Cir. 2005)(nonprecedential)(failure of prison official to process administrative grievance did not amount to a constitutional violation or personal involvement in the alleged constitutional deprivation grieved).

Alex alleges that the remaining defendants either failed to properly supervise their subordinates (Corbett, Wetzel, Gavin and Kosciuk), failed to properly investigate his concerns after he was issued the misconduct prior to his disciplinary hearing (Deputy Superintendent Ellett, Capt. Dobbs, Capt. Mushensky; Capt. Scharst; Lt. Smith; Unit Manager Fryer; and Ms. Mikolon), or failed to take corrective action against Ms. Bognatz after the PRC overturned his misconduct (Ms. Banta, John Gelatt, and Lt. Villella).

Alex cannot impose liability on Governor Corbett, DOC Secretary Wetzel, Supt. Gavin or Major Kosciuk on the basis of their supervisory roles. *See* Doc. 1-2, ECF pp. 12-14; *Evancho*, 423 F.3d at 353. Likewise, because Alex does not have a constitutional right to have his written or verbal requests answered or investigated prior to

his disciplinary hearing, his claims against Deputy Supt. Ellett, Capt. Dobbs, Capt. Mushensky, Capt. Scharst, Lt. Smith, Counsel Fryer, and Ms. Mikolon, must be dismissed. For similar reasons, Alex fails to state a claim against the members of the PRC (Ms. Banta, John Gelatt and Lt. Villella) who overturned his misconduct with prejudice.  Not only was their involvement with Alex after the issuance of the allegedly retaliatory misconduct, but their actions were favorable to him.  Their after-the-fact review of Alex's misconduct appeal, which granted the relief he requested (dismissal of the misconduct), does not demonstrate their personal involvement in the underlying First Amendment retaliation claim.  *See Rode*, 845 F.2d at 1208.  Therefore, these Defendants too are entitled to be dismissed from this action without leave to amend, as amendment would be futile.

V.   *Conclusion*

Based on the above, only Alex's First Amendment retaliation claim against Ms. Bognatz remains.  The other Defendants will be dismissed from the action pursuant to 42 U.S.C. § 1915(e)(2)(B)(ii).

An appropriate order follows.


/s/ William W. Caldwell  
William W. Caldwell  
United States District Judge


Date: February 24, 2014