IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY JOSEPH ALEX, I,

    Plaintiff

    vs.

JOHN E. WETZEL, *et al.*,

    Defendants

CIVIL NO. 1:CV-13-0304

(Judge Caldwell)

*M E M O R A N D U M*

I. *Introduction*

The pro se plaintiff, Anthony Joseph Alex, I, an inmate at the State Correctional Institution in Waymart, Pennsylvania, (SCI-Waymart), filed this action on January 29, 2013. On February 24, 2014, the court granted in part, and denied in part, the defendants' motion to dismiss. *Alex v. Wetzel*, 2014 WL 690610 (M.D. Pa. Feb. 24, 2014). As a result, only one claim against a single defendant remains: Alex's First Amendment claim against Counselor Bognatz that she issued him a false misconduct in retaliation for his "going over her head" to Deputy Superintendent Ellett after Bognatz denied him an incentive-based transfer.

Presently before the court is defendant Bognatz's motion for summary judgment. For the reasons that follow, the motion will be denied.

II.     *Standard of Review*

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law." *MacFarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).  In reviewing a motion for summary judgment, the court must view all facts "in the light most favorable to the non-moving party" and "all reasonable inferences [should be drawn] in that party's favor." *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).  An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  *Id.* at 248, 106 S.Ct. at 2510.  A material fact is any fact that might affect the outcome of a suit under the governing substantive law. *Gonzalez v. Sec'y of Dept. of Homeland Sec.,* 678 F.3d 254, 261 (3d Cir. 2012).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn

in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004)(quoting *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2510).

III.   *Statement of Facts*

The following facts are undisputed or, where disputed, reflect Alex's version of the facts, pursuant to this court's duty to view all facts and reasonable inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2510.

Alex is a convicted sex offender. His various offenses involved his daughters, A.A. and C.A.. (Doc. 56, ECF p. 7). Alex is prohibited from contacting either of his victims. (*Id.*, ECF p. 8). On or about December 27, 2008, Alex received a misconduct for contacting A.A.. (Doc. 59, ECF p. 13 and p. 37). Alex was repeatedly told to refrain from contacting his victims. (Docs. 56, ECF pp. 5-8). On January 8, 2009, Alex was found guilty of two Class I violations, refusing to obey an order and unauthorized use of the telephone, as a result of his admitted unauthorized contact with his daughter A.A. (Doc. 59, ECF p. 37).

Heather Bognatz is employed by the Pennsylvania Department of Corrections (DOC) as a Corrections Counselor at SCI-Waymart. (Doc. 57, Statement of Material Facts (SMF) ¶ 9). She has held this position since May 2005. In her role as a Corrections Counselor, she provides assistance to inmates on her caseload, including Alex. (*Id.*, SMF ¶ 11). Her duties include reviewing inmate requests for incentive-based transfers. (*Id.*, SMF ¶ 12).

On April 9, 2012, Alex wrote an Inmate Request to Staff Member (request slip) seeking guidance on how to obtain a promotional (incentive-based) transfer to a facility

closer to his home.  (*Id.*, SMF ¶ 13; Doc. 56, ECF p. 4).  The DOC has specific criteria that an inmate must meet to be considered for an incentive-based transfer.  (Doc. 56, ECF p. 5).  One of the requirements is that an inmate must "not be scheduled for parole review within the next *nine* months."  (*Id.*)  Another requirement is that an inmate have "no class I misconducts for *two years* and no more than one Class II misconduct in the past year".  (*Id.*)  On April 11, 2012, Bognatz advised Alex he was ineligible for such a transfer because he was "to close to parole review.  They are scheduled to see you in September 2012 - cannot be 9 months from parole interview.  Must also be misconduct free for 2 years."  (Doc. 56, ECF p. 4).

On April 11, 2012, Bognatz approved Alex's request to supplement his authorized telephone list.  (Doc. 59, ECF p. 24).  Alex was granted permission to contact J. Fromville whom he identified as a "friend."  (*Id.*)  Fromville is Alex's son-in-law and married to A.A.  When approving Alex's request to contact Fromville, Bognatz specifically advised him "Do not speak with victim [A. A.] at Fromville home.  Security notified."  (*Id.*)

On September 18, 2012, Alex sent a request slip to Deputy Superintendent Ellett seeking an explanation as to "why SCI Waymart keeps denying [him] a vocational education transfer and a promotional transfer" and asks for her help with this issue.  (Doc. 59, ECF pp. 27-28).  On September 20, 2012, Deputy Ellett advised Alex that program transfers are different than incentive-based transfers, and advised him "talk to your team."  (*Id.*, ECF p. 27).

On September 23, 2012, Alex sent Bognatz a second request slip asking about an incentive-based transfer.  (Doc. 57, SMF ¶ 18; Doc. 59, ECF p. 29).  In his request he wrote "I sent Mrs. Ellett a request slip and she referred me to you."  (Doc. 59,

-4-

ECF p. 29).  Bognatz responded on September 24, 2012, stating "I have explained - you <u>do not</u> meet criteria - you are scheduled to see parole within 9 months - not eligible if you are on a parole docket in the next 9 months.  I already replied to this request on 9/4/2012 - once you receive a green sheet - you can request - need copy of 'green sheet.'"[1]  (*Id.*)(emphasis is original).

In formulating her response to Alex's request for an incentive-based transfer and his upcoming parole review, Bognatz conducted a review of Alex's records.  (Doc. 57, SMF ¶ 19; Doc. 59, ECF pp. 32-33).  Because Alex "has a practice"[2] of attempting to contact his victims, Bognatz contacted Shawn Tech, the company that provides the computer programming to monitor inmate telephone calls, and was informed that records showed that Alex had placed a telephone call on September 3, 2012, to a telephone number listed as A. A.'s residence.  (Doc. 57, SMF ¶ 22).  That call lasted for approximately fifteen (15) minutes.  (*Id.*).  According to Bognatz, "[t]here was no indication that the

---

[1]  In her Reply Brief, Bognatz clarified that

> It is the decision date, not the parole interview date, which triggers computing the nine months for purposes of determining eligibility for incentive-based transfer per policy.  If parole is denied, the decision will state when the inmate has his next interview.  If it is within nine months then no incentive-based transfer is permitted.

Doc. 60, Def.'s Reply Br.

[2]  In support of her statement that Alex "has a practice" of attempting to contact his victims, Bognatz references a February 7, 2013, disciplinary hearing report (misconduct no. B089581) where Alex was found guilty of corresponding with his daughter A.A.. *See* Doc. 57, SMF ¶ 20 and Doc. 56, ECF pp. 9-11.  However, the 2013 misconduct took place after the September 24, 2012, misconduct that is the basis of the retaliation claim in this lawsuit.  Moreover, Bognatz admits that the "only" infraction she can recall Alex having for contacting his victims was when he contacted A.A. "by way of a 3rd party telephone call."  (Doc. 59, ECF p. 34).

-5-

authorized inmate telephone list had been updated to include [A.A.], and that fact of a call to her home remained." (*Id.*, SMF ¶ 23).

On September 24, 2012, Bognatz issued Alex misconduct no. B89540 concerning the September 3, 2012, telephone call. (*Id.*, SMF ¶ 24; Doc. 56, ECF p. 12). In the misconduct, she notes that "[t]he date of [the misconduct] report differs from the date of incident due to investigation." (Doc. 56, ECF p. 12). Bognatz never listened to the September 3, 2012, telephone conversation. (Doc. 59, ECF p. 31). She did not speak to prison security before issuing the misconduct. (*Id.*, ECF p. 33). The Security Office did not tell Bognatz to issue Alex the misconduct. (*Id.*) Bognatz issued the misconduct due to Alex's "questionable telephone activity." (*Id.*, ECF pp. 32-33).

On September 28, 2012, the hearing examiner conducted a misconduct hearing. (Doc. 57, SMF ¶ 26; Doc. 56, ECF p. 13). Alex was found guilty of both Class I offenses and sentenced to ninety days in the Restricted Housing Unit (RHU) and had his telephone privileges suspended for 180 days. (Doc. 56, ECF p. 13). Alex appealed the misconduct to the Program Review Committee (PRC). (Doc. 57, SMF ¶ 27). Per the direction of the PRC, someone from the Security Office listened to the tape recording of Alex's September 3, 2012, telephone call. (*Id.*, SMF ¶ 28). It was determined that Alex did not speak with his victim during the call. (*Id.*; Doc. 56, ECF p. 14). On October 12, 2012, the PRC reversed the Hearing Examiner's finding and dismissed the misconduct. (Doc. 57, SMF ¶ 30; Doc. 56, ECF p. 14).

Bognatz issued the misconduct "[b]ecause the request for transfer and [Alex's] upcoming parole review caused [her] to look at [Alex's] file and inquire into [his] telephone activity. The transfer request was *not* the basis for the misconduct [she] wrote,

-6-

only the questionable telephone activity was." (Doc. 59, ECF pp. 32-33).  Bognatz acted based on the information she had on Alex's prior history of attempting to make contact with his victim.  (Doc. 57, SMF ¶ 30).

Alex was interviewed by the Pennsylvania Board of Probation and Parole on September 7, 2012.  (Doc. 59, ECF p. 28; Doc. 60, ECF p. 1).  The Parole Board did not issue its decision until November 2012.  (Doc. 60, ECF p. 1).

IV.  *Discussion*

Alex alleges Bognatz issued him a false misconduct in retaliation for his "going over her head" to Deputy Superintendent Ellett after Bognatz denied him an incentive-based transfer.  In moving for summary judgment, Bognatz makes two arguments.  First, Alex was not engaged in constitutionally protected activity.  Second, he cannot show there was a causal relationship between his request to Deputy Ellett and her issuance of the misconduct.  (Doc. 55, Def.'s Br. in Supp. Mot. for Summ. J., ECF p. 6).

It is well-settled that "[g]overnment actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)(quoting *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000).  Accordingly, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges he was denied.  *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

A prisoner alleging a First Amendment retaliation claim must show that "(1) he engaged in constitutionally protected conduct, (2) he was subjected to adverse actions by a

-7-

state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action." *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011)(internal citations omitted).  The inmate has the initial burden to establish that constitutionally protected activity was a substantial or motivating factor in the adverse action taken against him.  *Rauser,* 241 F.3d at 333.  An adverse action is conduct that is "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights."  *Brightwell*, 637 F.3d at 194 (internal quotation marks and quoted case omitted).

"To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a patter of antagonism coupled with timing to establish a causal link."  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  Timing itself may be "sufficient to establish" that retaliation was a substantial or motivating factor (i.e. a causal link) but "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive."  *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003)(quoting *Krouse v. American Sterlizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)); *see also Kachmar v. Sungard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997 (stating that "temporal proximity merely provides an evidentiary basis from which an inference can be drawn").  Timing in connection with other types of suggestive evidence is also sufficient to demonstrate the requisite causal link.  *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 2801-81 (3d Cir. 2000); *see also Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989)(causal link established where plaintiff discharged two days following employer's receipt of the plaintiff's EEOC complaint).

-8-

Even if a prisoner establishes the three requisite elements to present a *prima facia* retaliation claim, "prison officials may still prevail by showing that they 'would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'" *Bond v. Horne*, 553 F. App'x 219, 223 (3d Cir. 2014)(nonprecedential)(quoting *Rauser*, 241 F.3d at 334.

With respect to the first factor, Alex identifies the filing of a request slip with Deputy Ellett as the protected activity. The filing of lawsuits and grievances against prison officials is a protected activity for purposes of a retaliation claim. *See Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action arising under the constitution). This protection includes the filing of inmate request slips. *See Dickson v. McGrady*, No. 1:CV-09-0195, 2010 WL 1330082, *6 (M.D. Pa. Mar. 30, 2010). Accordingly, the first prong of the *Rauser* test is satisfied.

Next, Alex argues his placement in the RHU in disciplinary confinement as a result of the false misconduct meets the second prong of the retaliation test. Bognatz does not dispute "that the issuance of a misconduct resulting in disciplinary time is an adverse action." (Doc. 55, ECF p. 6, n. 2). Alex spent approximately fifteen days in disciplinary custody prior to Bognatz's misconduct being overturned by the PRC.

Finally, as to the third prong, the court concludes that Alex has identified sufficient circumstantial evidence in the record to support his retaliation claim, and to place in dispute Bognatz's proffered legitimate reasons for issuing him the misconduct. Bognatz conducted a review of Alex's records and telephone activity after learning that he had contacted Deputy Ellett regarding a transfer request. Although Bognatz states her

-9-

September 24, 2012, record and telephone-activity review was premised on formulating her response to Alex's recent inquiry and his upcoming parole review, she acknowledges that Alex was interviewed by the parole board weeks in advance of her file review.  Further, Bognatz acknowledges that the only basis for the issuance of the misconduct was Alex's questionable telephone activity of calling the Fromville home.  (*Id.*)  However, five months earlier, Bognatz had approved that number for Alex's contact, only cautioning him not to speak with his victim residing at that home.  Additionally, the misconduct was issued without direction from the institution's security office, or her consultation with it.  Further, according to Bognatz, the security office investigated the telephone call, but did not issue Alex a misconduct for it.  Finally, the misconduct was issued one day after Bognatz learned that Alex had contacted Deputy Ellett concerning his difficulty in obtaining a transfer to a different facility, making the timing of the alleged retaliatory misconduct "unusually suggestive" of retaliatory motive.

      In light of the above-cited facts, Bognatz's motion for summary judgment will be denied.

      An appropriate order follows.

                          /s/ William W. Caldwell
                          William W. Caldwell
                          United States District Judge

Date: February 3, 2015